**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TONKAWA TRIBE OF INDIANS OF OKLAHOMA, *et al.*,

      Plaintiffs,

  vs.

SCIENTIFIC GAMES CORPORATION, *et al.*,

      Defendants.

ALFRED T. GIULIANO as Liquidation Trustee for RIH Acquisitions NJ, LLC d/b/a Magnolia House Casino d/b/a The Atlantic Club Casino Hotel and Ranchos Club Casino, Inc,

      Intervenor.

Case No.: 2:20-cv-01637-GMN-BNW

**ORDER**

Pending before the Court is the Motion to Intervene, (ECF No. 4) filed by Alfred T. Giuliano as Liquidation Trustee for RIH Acquisitions NJ, LLC d/b/a Magnolia House Casino d/b/a The Atlantic Club Casino Hotel and Ranchos Club Casino, Inc. d/b/a Magnolia House Casino ("Intervenor"). Plaintiffs Tonkawa Tribe of Indians of Oklahoma d/b/a Tonkawa Enterprises, Cow Creek Band of Umpqua Tribe of Indians, and Umpqua Indian Development Corporation, (collectively, "Plaintiffs") filed a Response, (ECF No. 34). Intervenor filed a Reply, (ECF No. 40).

Also pending before the Court is Intervenor's Motion to Transfer, (ECF No. 5). Plaintiffs filed a Response, (ECF No. 33), to which Intervenor filed a Reply, (ECF No. 41).

For the reasons discussed below, the Court **GRANTS** Intervenor's Motion to Intervene and Motion to Transfer.

I. <u>BACKGROUND</u>

This case arises from Defendant Scientific Games Corporation's, Defendant Bally Technologies', and Defendant Bally Gaming's (collectively, "Defendants'") alleged monopolization of the relevant market for automatic card shuffling machines for regulated casinos in the United States. Defendant Scientific Games Corporation ("SGC") manufactures automatic card shufflers, which are sold and leased to regulated casinos in the United States. (Second Amended Complaint ("SAC") ¶ 17, ECF No. 39). Defendant SGC acquired Defendant Bally Technologies in 2015. (*Id*.). At that time, Defendant Bally Technologies owned both non-party SHFL Entertainment, Inc. ("SHFL") and Defendant Bally Gaming. (*Id*.).

SHFL owns two patents— the '982 patent and the '935 patent—based on its model of an automatic card shuffler named "Deckmate 1." (*Id*. ¶18). The Deckmate 1 is installed directly into the gaming table with the upper surface sitting flush with the surface of the table. (*Id*. ¶ 18). According to SHFL, the Deckmate 1 uniquely uses an elevator to shuffle the cards under the gaming table. (*Id*.). The elevator has a cover that takes the cards from the dealer, randomly shuffles the cards, and moves automatically to return the cards to the dealer when the cards are completely randomized. (*Id*.). In 2003, the United States Patent and Trademark Office ("PTO") issued the '982 patent and '935 patent. (*Id*. ¶¶ 18–19).

Between 2002 and 2013, SHFL initiated various patent infringement lawsuits against other competitors in the card shuffling relevant market, including CARD LLC, VendingData, Taiwan Fulgent, and TCS John Huxley America, Inc. ("TCS"). (*Id*. ¶ 25–26, 45). Plaintiffs allege that these lawsuits often resulted in SHFL's eventual acquisition of the competitors, which reduced meaningful competition in the card shuffling relevant market. (*Id*. ¶ 50).

Specifically, in October 2012, SHFL filed suit against Digideal Corporation ("Digideal") in the District of Nevada, alleging that Digideal's prototype, the DigiShuffle, infringed SHFL's '982 and '935 patents. (*Id*. ¶ 25). In January 2014, Digideal initiated re-examination proceedings before the PTO on claims 1–3 and 42–46 of the '982 patent; and claims 1, 2, 9–11, and 14 of the '935 patent. (*Id*. ¶ 28). As to the '982 patent, Digideal challenged claims 1–3 and 42–46, arguing that the Block '044 patent issued in March 2002 utilized the same technology alleged to be innovative in the Deckmate 1. (*Id.* ¶ 21, 39). The PTO agreed and initially rejected the claims based on other pieces of prior art. (*Id*. ¶ 21). SHFL, in response, amended its claims to state that the Deckmate 1 must be mounted flush with the gaming table surface—a feature not taught by the Block patent. (*Id*.). The PTO ultimately confirmed that the claims in the '982 patent were patentable and reissued a reexamination certificate in July 2015. (*Id*.). Similarly, as to the '935 patent, the PTO initially rejected some of the claims in light of the Block '044 patent and Roblejo '122 patent. (*Id*. ¶ 22). Upon SHFL's cancellation of the reexamined claims, the PTO issued a reexamination certificate for the '935 patent. (*Id*. ¶ 30). Plaintiffs allege that SHFL failed to disclose relevant pieces of prior art concerning the Nicoletti Shuffler, the Luciano Prototype, the Roblejo Prototype, and the Block patent during the re-examination proceedings and underlying prosecution. (*Id*. ¶¶ 40–49).

### A. *Shuffle Tech* Litigation

In April 2015, Shuffle Tech International, LLC ("Shuffle Tech") filed the first monopolization suit against SHFL in the Northern District of Illinois. (*Id*. ¶ 21); *see generally Shuffle Tech International LLC et al. v Scientific Games Corp. et al.* ("*Shuffle Tech* Litigation"), No. 1:15-cv-3702 (N.D. Ill.). Shuffle Tech, a potential competitor, alleged that SHFL violated Section 2 of the Sherman Act by fraudulently procuring two patents from the PTO and engaging in sham litigation to eliminate competitors in the relevant market. (SAC ¶ 21). In August 2018, a jury returned a verdict against Defendants and SHFL for $315 million

1  to compensate Shuffle Tech for their lost profits materially caused by Defendants'
2  monopolization of the card shuffling relevant market. (*See* J., *Shuffle Tech* Litigation, Ex. B to
3  SAC, ECF No. 39-2).

### B. Other Related Litigation

Multiple similar lawsuits, including the present action, emerged after the *Shuffle Tech* Litigation. On March 15, 2019, TCS filed suit against Defendants in the Northern District of Illinois. *See TCS John Huxley America, Inc., et al. v. Scientific Games Corp. et al.*, Case No. 19-cv-1846 (N.D. Ill.) (the "*TCS* Litigation"). TCS alleges that Defendants monopolized the market for automatic card shufflers for regulated casinos through: (a) Defendants' wrongful enforcement of fraudulently procured patents from the PTO; and (b) Defendants' sham litigation against TCS and other competitors. (*See* Compl., *TCS* Litigation, Ex. B to Mot. Transfer, ECF No. 5-1).

On September 4, 2020, Intervenor filed his own lawsuit against Defendants in the Northern District of Illinois. *See Alfred T. Guiliano v. Scientific Games Corp. et al.*, Case No. 1:20-cv-05262 (N.D. Ill.) (the "*Guiliano* Litigation"). Intervenor, a direct purchaser of automatic card shufflers, alleges that Defendants' monopolization and exclusion of competitors forced direct purchasers to pay "supracompetitive prices" in violation of Sections Two and Three of the Sherman Act. (*See* Compl. ¶ 5, *Guiliano* Litigation, Ex. C to Mot. Transfer, ECF No. 5-1). On September 8, 2020, Rancho's Club Casino, Inc. d/b/a Magnolia House Casino filed a nearly identical class action in the Northern District of Illinois on behalf of direct purchasers of automated card shufflers. *Rancho's Club Casino, Inc. v. Scientific Games Corp. et al.*, Case No. 1:20-cv-05295 (N.D. Ill.) (the "*Rancho's Club Casino* Litigation).

Plaintiffs, in the instant action, similarly filed this class action on behalf of "direct purchasers" of commercial card shufflers in the United States. (*See* Compl., ECF No. 1); (*see also* SAC, ECF No. 39). Plaintiffs allege that Defendants monopolized the United States card

shuffling market in violation of Section Two of the Sherman Act, 15 U.S.C. § 2. (SAC ¶¶ 68–70). Additionally, Plaintiffs claim that Defendants are precluded from relitigating the issues of monopolization from the *Shuffle Tech* Litigation. (*Id*. ¶ 69). Plaintiffs accordingly request compensatory damages, attorneys' fees and costs, and pre- and post-judgment interest on all sums awarded. (*Id*. at 19–20).

On September 15, 2020, Intervenor sought to intervene for the limited purpose of requesting transfer to the Northern District of Illinois. (Mot. Intervene 1:20–26). The Court first addresses the Motion to Intervene, (ECF No. 4), before turning to the Motion to Transfer, (ECF No. 5).

## II.    LEGAL STANDARD

### A.  Motion to Intervene

Under Rule 24(b), the court may allow a party to intervene if either: (1) the party "is given a conditional right to intervene by federal statute;" or (2) the party "has a claim or defense that shares with the main action a common question of law or fact." *See* Fed. Rule Civ. Pro. 24(b)(1)(A)–(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *See* Fed. Rule Civ. Pro. 24(b)(3). More specifically, permissive intervention requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir.), cert. denied, 506 U.S. 868, 113 S. Ct. 197 (1992). The district court has broad discretion in determining whether to allow intervention. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). In exercising this discretion, "the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *See Venegas v. Skaggs*,

867 F.2d 527, 530 (9th Cir. 1989); *see also Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998).

### B. Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See* 28 U.S.C. § 1404(a). "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). The burden is on the moving party to demonstrate that the balance of conveniences favoring the transfer is high. The movant must make "a clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).

### III. DISCUSSION

### A. Motion to Intervene, (ECF No. 4)

Intervenor argues that the Court may permit intervention because: (1) Intervenor does not need to demonstrate an independent basis for jurisdiction; (2) Intervenor shares a common question of law or fact with the main action; and (3) its motion is timely. (Mot. Intervene 5:4–6:5, ECF No. 4). In response, Plaintiffs argue that Intervenor must demonstrate an independent basis for jurisdiction and fails to do so in its Motion. (Resp. to Mot. Intervene 2:17–4:18, ECF No. 34). Plaintiffs further assert that intervention will unduly delay or prejudice the original parties. (*Id*. 4:21–6:2). Because Plaintiffs do not dispute that Intervenor timely filed its

Motion,[1] the Court limits its discussion to the remaining elements: (1) whether Intervenor has shown an independent ground for jurisdiction; and (2) whether Intervenor shares a common question of law or fact with the instant case. *See Beckman Indus. Inc.*, 966 F.2d at 473.

### i. Independent Ground for Jurisdiction

As to the first requirement, Intervenor does not need to demonstrate an independent basis for jurisdiction for the Court to allow intervention. The Ninth Circuit in *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011), explicitly held that "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc.,* 644 F.3d at 844. Here, Plaintiffs filed suit in federal court based on federal question jurisdiction. (*See* Compl. ¶¶ 9–10, ECF No. 1). Intervenor does not seek intervention to raise new claims, but rather, seeks intervention for the limited purpose of potentially transferring the case to the Northern District of Illinois. (Mot. Intervene 5:18–20). Thus, the Court finds that Intervenor need not demonstrate an independent ground for jurisdiction.

### ii. Common Question of Law or Fact

As to the second requirement, Intervenor demonstrates a common question of law or fact with the instant case. Rule 24(b) permits the Court to allow anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." *See* Fed. R. Civ. Pro. 24(b). "The language of the rule makes clear that if the would-be-intervenor's claim or defense contains no question of law or fact that is raised also by the main action, intervention under Rule 24(b)(2) must be denied." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).

---

[1] Plaintiffs state, in its Response, that "[w]ith the exception of the timeliness element, the Movants' efforts are deficient, half-hearted, and fall short of what is required in this district." (Resp. to Mot. Intervene 2:9–11).

1       In the present case, the Court finds there are clear questions of law and fact in common between Intervenor and the instant case. Intervenor is a "member of the putative class proposed to be represented by Plaintiff" in the underlying case. (*See* Mot. Intervene 2:6–10). Intervenor also filed a nearly identical suit against Defendants in the Northern District of Illinois a day after Plaintiffs filed the instant action. *See Guiliano* Litigation. In the Complaint, Intervenor alleges that Defendants monopolized the market using fraudulently procured patents and sham litigation in violation of Sections 2 and 3 of the Sherman Act. (Compl. ¶¶ 88–100, Guiliano Litigation, ECF No. 1). These claims are nearly identical to those raised in Plaintiff's Complaint in the instant suit. (*See* SAC ¶ 63). Notably, Plaintiffs fail to contest that Intervenor shares a common question of law or fact with the instant case.[2] The Court thus finds that Intervenor has met the second prong under Rule 24(b).

### iii. Undue Delay or Prejudice

      As to the discretionary factors, Plaintiffs fail to articulate the undue delay and prejudice to the parties in this suit. Plaintiffs conclusively state that Intervenor's "involvement alone would greatly complicate the prosecution of Plaintiffs' claims in the action at bar." (Resp. to Mot. Intervene 5:19–21). Furthermore, "[t]he added complexity and potential conflicts between the existing Plaintiffs and the would-be intervenors alone would unduly delay and prejudice the Plaintiffs." (*Id*. 4:21–23). Plaintiff, however, fails to explain the specific delay and prejudice that would result from allowing Intervenor to enter this lawsuit. Contrary to Plaintiff's implication, permitting intervention for the limited purpose of requesting transfer may further simplify the cases given the similar class claims and anticompetitive conduct.

---

[2] Intervenors note that Defendants may have attempted to argue that there are no common questions or law or fact because the "TCS Action" is not a class action but rather, an action for alleged lost profits by alleged competitions of the Defendants. (*See* Resp. to Mot. Intervene 5:13–18); (*see also* Reply to Mot. Intervene 3:21–4:7). The Court finds this distinction insignificant. Whether Defendants monopolized the market of card shufflers is a common question of law and fact shared between Intervenors and Plaintiffs in the instant case.

Because Intervenor otherwise meets the requirements for permissive intervention and the Court does not find undue delay or prejudice, the Court grants the Motion to Intervene.

**B. Motion to Transfer, (ECF No. 5)**

Intervenor additionally moves to transfer the case to the Northern District of Illinois pursuant to the "first-to-file" rule and 28 U.S.C. § 1404(a). (Mot. Transfer 2:9–13, ECF No. 5). Plaintiffs refuse to transfer the case, arguing that: (1) Intervenor does not have standing to transfer; (2) the instant case is the first-filed casino purchaser action; and (3) Intervenor cannot show that transferring is in the interest of justice and fairness under Section 1404(a). (Resp. to Mot. Transfer at 3–11, ECF No. 33).[3] Because the Court has already determined that Intervenor may intervene in the present case, the Court limits its below discussion to whether transfer is proper under Section 1404(a).

Under Section 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." *See* 28 U.S.C. § 1404(a).  The Court first analyzes whether the Northern District of Illinois is a judicial district in which the instant action "might have been brought." *See* 28 U.S.C. §§ 1404(a).

                i.  <u>Proper Venue</u>

Intervenor first argues that Plaintiffs could have initiated the instant action in the Northern District of Illinois because "each Defendant has transacted business, maintained substantial contacts, and committed overt acts in furtherance of the illegal restraint of trade throughout the Northern District of Illinois." (Mot. Transfer 7:25–27).  A district is one where a suit might have been brought if "when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant." *Hoffman v. Blaski*, 363 U.S. 335, 344, 80 S.

---

[3] Defendants, in their Motion to Dismiss, also support transferring the case to the Northern District of Illinois. (*See* Def.'s Mot. Dismiss ("MTD") 19:9–22:13, ECF No. 49).

Ct. 1084, 4 L. Ed. 2d 1254 (1960). Under this standard, transfer is appropriate when venue is proper and personal jurisdiction exists over the defendant in the transferee jurisdiction. *Id*. at 343-44. For venue to be proper, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391 (b)(2).

Plaintiffs failed to address, in their Response, whether the suit "might have been brought" in the Northern District of Illinois. Under Local Rule 7-2, "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." *See* D. Nev. Local R. 7-2(d). Accordingly, the Court finds that Plaintiffs concede this first point and turns its discussion to whether transfer is in the interest of justice.

### ii. The Interest of Justice

The Supreme Court has instructed that a transferor court "adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (internal quotation marks omitted). Multiple convenience and fairness factors may be weighed to determine whether transfer would be "in the interest of justice" as required by § 1404(a), including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

1 *Jones*, 211 F.3d at 498-99. "Additionally, the presence of a forum selection clause is a
2 significant factor" as well as the "relevant public policy of the forum state, if any." *Id*. at 499
3 (internal quotation marks omitted).

4     The first factor— the location where the relevant agreements were negotiated and
5 executed—weighs against transfer. Given that Defendants are headquartered in Nevada, many
6 relevant agreements regarding the sale of the card shuffling machine likely originated in
7 Nevada. (*See* SAC ¶¶ 8–10). Notably, Intervenor does not address the first factor.

8     The second and third factors are neutral. As to the state most familiar with the
9 governing law, both the Northern District of Illinois and the District of Nevada are equally
10 familiar with the Sherman Act. *See Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1117
11 (N.D. Cal. 2014) ("since the action involves federal law, neither district is more 'familiar with
12 the governing law.'"). As to the third factor, both parties agree that "[c]ourts generally give
13 deference to a plaintiff's choice of venue." *See Editorial Planeta Mexicana, S.A.*, 2012 U.S.
14 Dist. LEXIS 102029, 2012 WL 3027456, at *5; *Decker Coal Co. v. Commonwealth Edison
15 Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, "when an individual brings a derivative suit
16 or represents a class, the named plaintiff's choice of forum is given less weight. *Lou v.
17 Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Additionally, deference is "substantially reduced
18 when the plaintiff's choice is not its residence or where the forum lacks a significant connection
19 to the activities alleged in the complaint." *Id*. (quoting *Inherent.com v. Martindale-Hubbell*,
20 420 F. Supp. 2d 1093, 1100 (N.D. Cal. 2006)). Here, Plaintiff's choice of venue is not a
21 significantly strong factor given that the instant action is a class action suit and that Plaintiffs
22 do not reside in Nevada. (*See* SAC ¶¶ 5–7, 64) (noting that Plaintiffs reside in Oklahoma and
23 Oregon). The Court, therefore, finds that Plaintiff's choice of forum does not significantly
24 weigh in favor of transfer.

25

The fourth and fifth *Jones* factors concern the respective parties' contacts with the forum and the contacts relating to the plaintiffs' cause of action in the chosen forum, respectively. *Jones*, 211 F.3d at 498. These factors are neutral, even though Defendants are headquartered in Las Vegas. *See Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 540 (N.D. Cal. 2005) (finding that the fact the forum state is home to the divisional headquarters "is not a strong basis for transfer"); *In re TD Bank, N.A.*, 96 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015) (approving transfer even though the defendant is not headquartered in the forum state).

The sixth factor—the differences in the cost of litigation between the District of Nevada and the Northern District of Illinois—weighs in favor of transfer. Plaintiffs argue that there will be a speedier, less wasteful pretrial and trial in Nevada because the final judgment in the *Shuffle Tech* Litigation may preclude Defendants from relitigating the monopolization violation under the theory of collateral estoppel. (Resp. to Mot. Transfer at 6). Plaintiffs, however, may similarly argue issue preclusion in the Northern District of Illinois. Nothing in Plaintiffs' Response suggests that Plaintiffs would be precluded from arguing collateral estoppel in the Northern District of Illinois. Rather, as Plaintiffs note, resolution in the Northern District of Illinois may be more expeditious given that the Northern District of Illinois entered the judgment in the *Shuffle Tech* litigation and thus, is already familiar with the issues presented in this case. (Reply to Mot. Transfer 10:8–15). Indeed, three closely related cases are currently pending in the Northern District of Illinois. *See TCS John Huxley America, Inc., et al. v. Scientific Games Corp. et al.*, Case No. 19-cv-1846 (N.D. Ill.); *Alfred T. Guiliano v. Scientific Games Corp. et al.*, Case No. 1:20-cv-05262 (N.D. Ill.); and *Rancho's Club Casino, Inc. v. Scientific Games Corp. et al.*, Case No. 1:20-cv-05295 (N.D. Ill.). Accordingly, the Court finds that the sixth factor weighs in favor of transfer.

The seventh factor, under which the Court considers the availability of compulsory process to compel unwilling witnesses, also weighs in favor of transfer. "Convenience of

witnesses is often the most important factor in determining whether or not to transfer a given case." *Partney Constr., Inc.*, 2008 U.S. Dist. LEXIS 125164, 2008 WL 4838849, at *3 (citation omitted). Intervenor notes that two key witnesses identified in the Complaint, Kimball Anderson and Richard Schultz, reside in Chicago, Illinois. (Mot. Transfer at 7).[4] Mr. Anderson represented Defendant SHFL in the underlying sham litigations and thus, would likely serve as a material witness in the underlying case. (Compl. ¶¶ 57–59, *TCS* Litigation) ("Kimball Anderson is a Winston and Strawn lawyer based in Chicago who represented . . . SHFL against Taiwan Fulgent, TCS and DigiDeal in various patent infringement cases brought by SHFL." Because Mr. Anderson resides in Illinois, he is thus, outside the subpoena power of the District of Nevada. (*See id.*) ("Kimball Anderson . . . who reside[s] in the [Northern District of Illinois] would not be subject to the subpoena power of courts outside [the] district."). Plaintiffs argue that the case should remain in the District of Nevada because "all Defendants are headquartered in Las Vegas . . . [including] the senior officers." (*See* Resp. to Mot. Transfer 5:17–21). The convenience of non-party witnesses, however, is far more important in deciding whether or not to transfer a case under Section 1404. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (quoting *Aquatic Amusement Assoc. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D. N.Y. 1990)) (internal quotation marks omitted) ("[T]he convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor."). Accordingly, because the inconvenience of compelling non-party Mr. Anderson outweighs the inconvenience to Defendants and their employee witnesses, the Court finds that the seventh factor weighs in favor of transfer.

The last factor— the ease of access to sources of proof—also weighs in favor of transfer. Intervenor argues that "location of documents, substantial quantities of important documents are likely to exist in Chicago, where the Winston and Strawn attorneys that have perpetuated

---

[4] Plaintiffs seemingly do not name Richard Shultz in their Complaint. (*See* SAC, ECF No. 39).

the anticompetitive conduct at issue for years, are located." (Resp. to Mot. Transfer 9:26–10:7). Given that Plaintiffs do not rebut this point, the Court finds that this factor slightly weighs in favor of transfer.

Based on the foregoing, the *Jones* factors suggest that litigating the instant case in the Northern District of Illinois would serve the interests of justice under Section 1404. Because the instant action could have been initially filed in the Northern District of Illinois and transfer is fair and convenient for the parties, the Court accordingly grants Plaintiff's Motion to Transfer.[5]

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Intervenor's Motion to Intervene, (ECF No. 4), is **GRANTED**.

**IT IS FURTHER ORDERED** that Intervenor's Motion to Transfer, (ECF No. 5), is **GRANTED**.

**DATED** this __27__ day of August, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[5] Because the Court finds that transfer is appropriate under Section 1404, the Court does not address Intervenor's alternative argument that transfer is proper under the "first-to-file" rule. (Mot. Transfer at 5–6).